(10 Misc. Rep. 625.)

### SMITH v. FISHER.

(Supreme Court, Special Term, New York County.   December, 1894.)

VENDOR AND PURCHASER—OPTION TO PURCHASE—EXERCISE.

Where property was leased with the privilege to the lessee of purchasing, and the contract provided that, should the lessor begin certain repairs, the lessee should then be bound to purchase, the commencement of such repairs without the consent of the lessee would not operate as a decision to purchase.

Action by Emma Condit Smith against Isabella H. Fisher to recover money alleged to have been advanced by plaintiff to defendant, and also to recover possession of a bond and mortgage given by plaintiff.   Judgment for plaintiff.

Alex. Thain and Thomas M. Tyng, for plaintiff.

Everett Mackinstry, for defendant.

BARRETT, J.   The facts in this case are all one way, and they clearly entitle the plaintiff to equitable relief.   There can be no doubt upon the evidence that the real agreement between the parties was a renting, with the privilege of purchasing, and not an absolute sale.   The plaintiff's testimony to this effect is clear and convincing, and it is corroborated by the documents in evidence. The defendant's husband formulated the agreement in his own way, and to suit his own purposes.   He induced the plaintiff not to employ counsel.   But, although the instruments which he prepared were more beneficial to his wife than the facts warranted, they yet but thinly disguise the real agreement.   The contract to repurchase, executed about the time when the plaintiff took the deed, was plainly in execution of the original agreement to rent, with the privilege of purchasing.   Mr. Fisher's letters abundantly establish this.   In his ·letter to Mrs. Smith of March 30, 1893, he says:

"I will also draw up an agreement with you at the time of taking title, or I can draw up a form of agreement, and send to you for your approval, which I can have Mrs. Fisher sign, agreeing to purchase the house back January 1st, 1894, at the consideration of $44,500; you paying the interest and taxes on the entire amount from January, 1893, to January, 1894, which is the amount of rent you will have to pay.   The remainder which you have paid to Mrs. Fisher is to be returned to you at that time, or she give you back a mortgage the same as you have given to her, on the same conditions and the same interest," etc.

Again, a few days later (April 8, 1893), but still before Mrs. Smith took title, he writes to her:

"I will draw up a contract similar to the one we have made with you, which I will have Mrs. Fisher sign, agreeing to purchase the house back on the same conditions as it is purchased by you, providing you make up your mind you do not want to keep it.   There is no one-sided arrangement about it.   We are ready to give you the same as you give, and there should be no more feeling about the matter."

Long after the taking of title (August 5, 1893), he wrote to Mrs. Smith that Mrs. Fisher would buy back the house "the same as you purchased it of her.   If she can make payments faster and take possession sooner, she will do so."   The case might well rest upon the agreement to repurchase, for thereunder the plaintiff duly elected

not to keep the house. There is a provision in this agreement that, if Mrs. Smith decides to keep the house, Mrs. Fisher will change the furnace, and make certain repairs. There is a further provision that, should Mrs. Fisher begin the repairs, the agreement to repurchase should be null and void, and Mrs. Smith should then retain the house. The effect of this provision was that if Mrs. Fisher began to make the repairs, with Mrs. Smith's consent, it would operate as a decision to keep the house. But the commencement of such repairs without Mrs. Smith's consent, and contrary to her wishes, would certainly not thus operate. Consequently, the sending of a man to change the furnace without Mrs. Smith's knowledge or consent did not affect the existing option. That act was a cunning attempt on the part of Mr. Fisher to foreclose the option, but it was unavailing. All question on that head is set at rest by the following paper, which Mrs. Fisher signed upon the 23d of October, 1893:

"This is to certify that Mrs. Isabella Fisher, of her own free will and accord, and without the request of Mrs. Emma Condit Smith, repairs the house No. 480 West End avenue, and puts in a new furnace, and that, upon obtaining the permission of Mrs. Emma Condit Smith to do the aforesaid work, Mrs. Isabella Fisher agrees that it shall in no way interfere with her agreement to purchase the house back on the 30th day of December, 1893."

The plaintiff need not, however, rest upon the terms of the agreement to repurchase, treated independently. That agreement aids us in getting at the original transaction. When read in connection with the plaintiff's testimony, the letters of the parties, and the other documents, the conclusion is irresistible that the original contract to purchase, the deed and mortgage given thereunder, the contract to repurchase, and all the formal papers which were executed were but Mr. Fisher's way of expressing the bargain testified to by Mrs. Smith. There can be no doubt that the plaintiff was grossly deceived as to the character of the house, and that she suffered greatly from its defects. The conduct of the defendant's husband was, to say the least, inequitable throughout. He led the plaintiff to believe that the house was well built, and that she was securing a comfortable residence. He also led her to believe that the documents which he was to prepare, and which she was to accept, without the advice of counsel, would adequately express the agreement to rent, with the privilege of purchasing. If, owing to his unfairness, these documents do not adequately express that agreement, equity will afford relief. As was said in Haviland v. Willets, 141 N. Y. 50, 35 N. E. 958:

"It is equally well settled that where there is a mistake of law on one side, and either positive fraud on the other, or inequitable, unfair, and deceptive conduct, which tends to confirm the mistake and conceal the truth, it is the right and duty of equity to award relief. All the cases which deny a remedy for a mere mistake of law on one side are careful to add the qualification that there must be no improper conduct on the other. Silliman v. Wing, 7 Hill, 159; Flynn v. Hurd, 118 N. Y. 26, 22 N. E. 1109; Vanderbeck v. City of Rochester, 122 N. Y. 285, 25 N. E. 408."

It follows, as the plaintiff duly elected not to keep the house, that she is entitled to judgment for the restoration of her bond and mortgage, and for the recovery of the amount advanced by her, less the agreed rent, with costs. Ordered accordingly.